1

2

3

4

5

6

7

8                            IN THE UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSE HUMBERTO MAGANA-TORRES,

11                  Petitioner,                  2: 10 - cv -2669 - WBS TJB

12        vs.

13   KELLY HARRINGTON,

14                  Respondent.            ORDER, FINDINGS AND

15                                         RECOMMENDATIONS

16   _____/

17        Petitioner, Jose Humberto Magana-Torres, is a state prisoner proceeding with a counseled

18   petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving an

19   aggregate indeterminate sentence of 62 years to life in prison after a jury convicted him of several

20   crimes related to, among other acts, the home invasion and attempted murder of an elderly

21   couple.  A jury found him guilty of: (1) three counts of auto theft (Cal. Veh. Code § 10851(a));

22   (2) conspiracy to commit robbery (Cal. Penal Code § 182(a)(1)); (3) residential burglary (*Id.* §

23   459); (4) two counts of home invasion robbery in concert (*Id.* §§ 211, 213(a)(1)(A)); (5) theft

24   from an elder (*Id.* § 368(b)); (6) false imprisonment (*Id.* § 236); (7) false imprisonment of an

25   elder (*Id.* § 368(f)); (8) assault with a deadly weapon (*Id.* § 245(a)(1)); (9) two counts of

26   conspiracy to commit murder (*Id.* §§ 182(a)(1), 187); (10) two counts of attempted premeditated

                                              1

1   murder (*Id.* §§ 664, 187(a)); (11) arson causing great bodily injury (*Id.* § 451(a)); (12) causing

2   injury to an elder (*Id.* § 368(b)(1)); and, (13) three counts of receiving stolen property (*Id.* § 496).

3   The jury also found true several enhancements for causing great bodily injury (*Id.* § 12022.7).

4       Petitioner raises four claims in this federal habeas petition; specifically:(1) the

5   introduction of Petitioner's co-conspirator's plea agreement into evidence violated Petitioner's

6   confrontation rights guaranteed by the Sixth Amendment ("Claim I"); (2) the introduction of

7   Petitioner's co-defendant's statement to police and the limitation on cross-examination of the

8   interviewing officer violated Petitioner's rights of confrontation and to present a defense ("Claim

9   II"); (3) the reopening of closing arguments based upon a question from the jury, without the jury

10  declaring a deadlock, violated Petitioner's constitutional rights ("Claim III"); and, (4) the trial

11  court erred in instructing the jury on various components of attempted premeditated murder

12  ("Claim IV").  For the reasons stated herein, the federal habeas petition should be denied.

13                        I.  FACTUAL BACKGROUND[1]

14       In the early morning of June 4, 2004, 68-year-old Cesario Pinon
       awoke to the sounds of people walking and making noises in his
15     house at 7429 Apple Hollow Loop in Roseville. He woke up his
       live-in partner Sarah Jedrzynski and warned her to keep quiet
16     because he had heard noises. A few minutes later, three strangers,
       who had their faces covered, entered the bedroom. One of the men,
17     speaking in both Spanish and English, ordered Pinon and
       Jedrzynski to lie face down on their bed, to keep still, and to tell
18     them where their money was. The intruders tied the couple at the
       wrists and ankles with electrical cord and duct tape, and proceeded
19     to ransack their home. Pinon initially denied having any money,
       but after one of the men struck him multiple times on the left
20     shoulder with a flat object, he gave the men the combination to
       their lockboxes. Pinon managed to work his hands somewhat free,
21     but one of the men returned and retightened his bindings.

22     When Pinon no longer heard any noises, he climbed out of bed
       with his hands and ankles still bound. He noticed that the room
23     was full of smoke and there were flames in the closet. As he

24     _____

25       [1]   The factual background is taken from the California Court of Appeal, Third
     Appellate District decision on direct appeal from March 2009 and filed in this Court by
26   Respondent on February 3, 2011 as Exhibit 1 to the Answer (hereinafter referred to as the "Slip
     Op.").

hopped around the end of the bed, trying to locate Jedrzynski, Pinon tripped, fell, and lost consciousness. Jedrzynski managed to untie her hands, pushed herself through a window and ran to a neighbor's house, who then called 911.

Police officers and firefighters rescued Pinon from the burning bedroom and extinguished the fire. Pinon was taken to the hospital where he was treated for smoke inhalation and a high level of carbon monoxide.

Firefighters discovered that telephone cords had been cut, several small fires throughout the house had been intentionally set, and the range knobs on the gas stove were turned to the "on" position.

The couple's 2004 Buick LeSabre was missing from their garage. Parked down the street from the home was a 1994 Mercury Grand Marquis with no license plates, which had been stolen that morning from Daniel Dillon.

That day, a 1992 Nissan Sentra SER owned by Nathanael Merrill was stolen from in front of his house. Inside the Sentra were various items of personal property, including a Bible, circular saw and various construction tools.

On June 3, 2004, someone also broke into a Ford pickup truck-a company vehicle assigned to Jody Leach-stealing a laptop computer, cell phone and camera.

Because the Buick LeSabre had been stolen from the victims' garage, the police activated its OnStar GPS system and located the vehicle in a carport at Edison and Bell in Sacramento. Inside the LeSabre, police discovered Jedrzynski's purse, Pinon's driver's license, a piece of the radio from the stolen Nissan Sentra, and some of the items stolen from Merrill and Leach.

On June 5, 2004, shortly after midnight, two Sacramento County Sheriff's deputies pulled over a blue Pontiac Sunbird that was missing its rear window and had expired registration tags. The steering column of the Sunbird had been peeled. Gomez-Perez was driving and his passenger was Magana-Torres. A search of the Sunbird yielded a Bible belonging to Merrill and the keys to the Buick LeSabre. There was also a cell phone displaying the name of "Heiner" plugged into the car charger.

At Gomez-Perez's apartment, officers discovered multiple items that had been stolen from the Pinon-Jedrzynski home and from the auto theft victims. Magana-Torres's fingerprints were found on Merrill's stolen Nissan Sentra, on Dillon's stolen Grand Marquis, and on Pinon's driver's license. Heiner Villeda's FN2 prints were found on the Sentra and on the LeSabre.

FN2. Heiner Orlando Villeda was charged with the present crimes along with Gomez-Perez and Magana-Torres. However, he pleaded guilty to several of the counts prior to the commencement of trial.

After waiving their constitutional rights, Magana-Torres and Gomez-Perez were interviewed separately by Roseville Police Department Detective Calvin Walstad, with the assistance of a Spanish translator. When he was shown a photograph of Villeda, Magana-Torres stated, "He is Heiner. He's the person who did everything." When Gomez-Perez was shown the same photograph, he stated, "He is Heiner" and "he is the one who told me to do everything." Gomez-Perez also said that $1,500, a computer, telephone, jewelry, and digital camera were taken from the victims' house on Apple Hollow Loop. He denied hitting anyone but said he saw Villeda hit the male victim three times with a file from a knife block in the house. Walstad then traveled to Pinon's house. In the bedroom, he discovered a sharpening steel from a knife block in the kitchen. The handle of the sharpening steel had been broken in half.

## II.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States.  *See* 28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies.  *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d); *Perry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000).

/ / /

1    In applying AEDPA's standards, the federal court must "identify the state court decision

2    that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).

3    "The relevant state court determination for purposes of AEDPA review is the last reasoned state

4    court decision." *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008) (citations omitted).

5    "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained

6    orders upholding that judgment or rejecting same claim rest upon the same ground." *Ylst v.

7    Nunnemaker*, 501 U.S. 797, 803 (1991).  To the extent no such reasoned opinion exists, courts

8    must conduct an independent review of the record to determine whether the state court clearly

9    erred in its application of controlling federal law, and whether the state court's decision was

10   objectively unreasonable.  *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). "The

11   question under AEDPA is not whether a federal court believes the state court's determination

12   was incorrect but whether that determination was unreasonable—a substantially higher

13   threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

14   "When it is clear, however, that the state court has not decided an issue, we review that question

15   *de novo*." *Reynoso v.Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (citing *Rompilla v. Beard*,

16   545 U.S. 374, 377 (2005)).

17                        III.  ANALYSIS OF PETITIONER'S CLAIMS

18        1.  Claim I

19        In Claim I, Petitioner alleges that the introduction into evidence of his co-conspirator's

20   guilty plea violated his right to confront the witnesses against him guaranteed by the Sixth

21   Amendment.  Petitioner was tried along with his co-defendant and co-conspirator, Octavio

22   Gomez-Perez.  Prior to trial, Petitioner's second accomplice, Heiner Villeda, entered a guilty plea

23   to a number of offenses related to the home invasion robbery.  At Petitioner's trial, the

24   prosecution attempted to call Villeda as a witness.  Outside of the presence of the jury, a hearing

25   was held to determine whether he would testify.  Rep.'s Tr. at 879.  Villeda, though he had

26   already plead guilty and was granted immunity from prosecution, refused to testify against his

                                              5

1   accomplices, citing the Fifth Amendment. *Id.* at 882-83, 1231-32.  In response, the prosecution

2   asked the court to take judicial notice of Villeda's plea. *Id.* at 1162.  Over Petitioner's objection

3   on Confrontation Clause grounds, the trial court allowed the prosecution to introduce evidence of

4   the plea through an exhibit listing the crimes Villeda had plead guilty to. *Id.* at 1162, 1166; *See*

5   Lodged Doc. No. 2 (Clerk's Supplemental Exhibits on Appeal).  The exhibit did not include any

6   admission that Petitioner or his co-defendant were also involved in the crime.  Subsequently, the

7   prosecutor relied on the plea when making his closing argument. *See* Rep.'s Tr. at 1512-13,

8   1523.

9       On direct appeal, the California Court of Appeal assumed that the Confrontation Clause

10  had been violated, but, applying *Chapman v. California*, 386 U.S. 18, 24 (1967), concluded that

11  the violation was harmless beyond a reasonable doubt.  Slip Op. at 9.  The court found that

12  Villeda's plea had no effect upon the verdict because: (1) there was ample other evidence, such

13  as fingerprints and the defendants' statements, that Villeda was involved in the crime and (2) the

14  evidence of Petitioner's guilt was "compelling." *Id.* at 9-10.  Here, Respondent does not

15  maintain that the admission of Villeda's plea was constitutional, but argues that the error was

16  harmless.  This court will assume that the introduction of Villeda's plea without the opportunity

17  to cross-examine him violated Petitioner's Confrontation Clause rights.

18      In determining whether a constitutional violation was harmless when a petitioner seeks

19  collateral relief from a state-court judgment, a federal court employs a less stringent harmless

20  error analysis, whether the "error 'had substantial and injurious effect or influence in determining

21  the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v.*

22  *United States*, 328 U.S. 750, 776 (1946)); *see Fry v. Pliler*, 551 U.S. 112 (2007) (holding that "in

23  § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-

24  court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* . . .

25  whether or not the state appellate court recognized the error and reviewed it for harmlessness

26  under . . . *Chapman*").  The *Brecht* standard requires reversal only if but for the error there is "a

6

1   reasonable probability" that the jury would have reached a different result.  *Clark v. Brown*, 450

2   F.3d 898, 916 (9th Cir. 2006).

3        Petitioner maintains that "the evidence connecting [him] to the home invasion robbery

4   and offenses committed within the residence was extremely weak without Villeda's guilty plea."

5   However, a careful review of the evidence adduced at trial shows there was ample alternative

6   evidence of Villeda's involvement in the crimes other than his guilty plea and the circumstantial

7   physical evidence strongly shows Petitioner conspired to commit the crimes.

8        Though Pinon could not identify any of the assailants, he did testify that three people

9   entered his house that night.  Several pieces of evidence connected Villeda to the crime.

10  Villeda's fingerprints were found on two of the stolen vehicles, including the Buick LeSabre that

11  was stolen from Pinon and Jedrzynski's home in the early morning hours of June 4, 2004, and

12  recovered only hours later by tracking the car via GPS.  Rep.'s Tr. at 1182-83, 777.   Petitioner

13  and his co-defendant's statements to police also implicated Villeda in the crime.  A detective

14  testified that when he showed Petitioner a photo of Heiner Villeda, Petitioner said "the person is

15  Heiner.  He is the person who did everything."  *Id.* at 1292-93.  When shown the same photo,

16  Petitioner's co-defendant, Gomez-Perez, said "he is Heiner and he was the one who told me to do

17  everything." *Id.* at 1295.  Gomez-Perez also told the officer that he saw Villeda hit Pinon three

18  times with a file.  *Id.*  Because of the other substantial evidence of Villeda's role in the crimes

19  and the fact that Villeda's plea did not name Petitioner as his accomplice, the introduction of

20  Villeda's guilty plea did not have a substantial and injurious effect or influence in determining

21  the jury's verdict.  *See Brecht*, 507 U.S. at 623.

22       The error is harmless not only because of the substantial evidence of Villeda's

23  involvement in the crime other than the plea, but because of the strong evidence of Petitioner's

24  guilt.  Petitioner's fingerprints were found on the car the assailants had previously stolen and left

25  parked near Pinon and Jedrzynksi's home.  Rep.'s Tr. at 1180.  Petitioner's fingerprints were also

26  found on Pinon's driver license, which was found in the abandoned Buick LeSabre stolen from

1  Pinon's home only hours after it was taken.  *Id.* at 1183-84.  Taken together, the fingerprints

2  prove that Petitioner was a participant in the home invasion robbery as they show he was there at

3  the time of the crime.  Additionally, when Petitioner and Gomez-Perez were arrested less than

4  twenty-four hours after the home invasion, they were in possession of stolen property from the

5  crime spree, including the keys to the Buick LeSabre.  *Id.* at 1146-47.  Petitioner's own

6  statement—"the person is Heiner.  He is the person who did everything"—shows that Petitioner

7  both knows Villeda, who is connected to the crimes by strong physical evidence, and that

8  Petitioner was aware of what transpired the night of the robbery.  Because of the strong evidence

9  of Petitioner's guilt, the introduction of Villeda's guilty plea, assuming Petitioner's Sixth

10  Amendment rights were violated, is harmless error as it did not have a substantial or injurious

11  effect upon the jury's verdict.

12          For the foregoing reasons, Petitioner is not entitled to relief on this claim.

13          2.  Claim II

14          Next, Petitioner alleges the state court erred when it allowed Petitioner's co-defendant's

15  statement to police to be admitted into evidence and then limited Petitioner's cross-examination

16  of the interrogating officer.  As discussed above, when Gomez-Perez was shown a photo of

17  Villeda by a detective he said "he is Heiner and he was the one who told me to do everything."

18  Gomez-Perez also admitted that "they took about $1,500, a computer, telephone, jewelry and

19  digital cameras from" Pinon and Jedrzynski's home and that, while denying he hit Pinon,

20  admitted Villeda hit Pinon three times with a file from the knife block in Pinon's kitchen.

21  Petitioner claims the introduction of the statement violated his Confrontation Clause rights and

22  that the limit on cross-examination, designed to protect inadmissible evidence from being put

23  before the jury, violated his right to a complete defense.  In ruling on this claim, the California

24  Court of Appeal stated as follows:

25  / / /

26  / / /

8

Prior to trial, and in accordance with *Bruton v. United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476] (*Bruton*) and *People v. Aranda* (1965) 63 Cal.2d 518 (*Aranda*), the court decided to redact each defendant's statement to Detective Walstad so that it did not implicate the other defendant. Each defendant objected to the admission of the other's out-of-court statements under *Aranda/Bruton* and *Crawford* [*v. Washington*, 541 U.S. 36 (2004)].

Defense counsel also asked for guidance about the scope of Detective Walstad's cross-examination. The trial court warned counsel to be careful, because "if you ask a question that elicits some references to a coparticipant, you can run into some problems," by inviting *Aranda/Bruton* error, which the court would not permit. Counsel for Gomez-Perez made an offer of proof as to the scope of proposed cross-examination,FN3 but the court ruled that redaction was the appropriate remedy. The court offered to allow defendants full cross-examination of Detective Walstad if they waived their *Aranda/Bruton* rights, but neither was willing to do so. Both defense attorneys then agreed to limit the scope of their cross-examination. Walstad testified as to each defendant's statement, in redacted form. Before deliberations, the jury was instructed to consider each statement only against the speaker and not against the other defendant.

> FN3. Counsel sought to ask Detective Walstad what Gomez-Perez said about who took the property, who engaged in what behavior inside the victims' residence, and who drove up to and left the residence.

Defendants now claim that admission of the redacted statements and the trial court's restriction on the crossexamination of Detective Walstad violated *Aranda/Bruton* and *Crawford*, as well as their constitutional right to confront witnesses against them. We disagree.

A trial court does not commit *Aranda/Bruton* error if the nontestifying codefendant's statement is redacted to eliminate not only the other defendant's name but also any reference to his existence, and the jury is given a proper limiting instruction not to use the codefendant's statement against him. (*Richardson v. Marsh* (1987) 481 U.S. 200, 208-211 [95 L.Ed.2d 176, 186-188] (*Richardson*); *People v. Orozco* (1993) 20 Cal.App.4th 1554, 1564.) That is exactly what occurred here.

Each defendant's claim that the trial court committed *Crawford* error in admitting the statement of the other defendant fares no better. In *Richardson, supra*, 481 U.S. at p. 211 [95 L .Ed.2d at p. 188], the United States Supreme Court held that introduction of the statement of a codefendant that (1) does not facially incriminate the defendant and (2) is qualified by a proper limiting instruction, does

9

not violate the defendant's constitutional right of confrontation. *Crawford* precludes the introduction of out-of-court testimonial statements admitted against the defendant unless the witness is unavailable and the defendant previously had an opportunity for meaningful cross-examination. (*Crawford*, *supra*, 541 U.S. at p. 59 [158 L.Ed.2d at p. 197].) The case was not concerned with a situation such as the one here, where the jurors are instructed they must not consider the extrajudicial statement of one defendant against the other defendant. In short, nothing in *Crawford* suggests a retraction of *Richardson*.

For similar reasons, the evidence was harmless beyond a reasonable doubt. The statement of each defendant was redacted to eliminate any reference to the other defendant and the jury was told to consider it only against the declarant. We presume the jury followed this admonition. (*People v. Davenport* (1995) 11 Cal.4th 1171, 1210.) Accordingly, each codefendant's statement, which accused Villeda of masterminding the robbery but contained no reference to anyone else, could not possibly have affected the jury's verdict as to the nonspeaker.

Defendants' complaint about the trial court's restriction on Detective Walstad's cross-examination fails because they have not demonstrated how a more robust cross-examination could have aided them. Gomez-Perez's offer of proof did not contain questions pertaining to Walstad's credibility. Instead, the line of questioning would have had the inevitable effect of implicating codefendant Magana-Torres (see fn. 3, ante), yet neither defendant was willing to waive his *Aranda/Bruton* rights. The trial court was not compelled to allow defendants to invite error in this manner. "Although the right of confrontation includes the right to cross-examine adverse witnesses on matters reflecting on their credibility, 'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination.' [Citation.] In particular, notwithstanding the confrontation clause, a trial court may restrict cross-examination of an adverse witness on the grounds stated in Evidence Code section 352. [Citation.] A trial court's limitation on cross-examination pertaining to the credibility of a witness does not violate the confrontation clause unless a reasonable jury might have received a significantly different impression of the witness's credibility had the excluded cross-examination been permitted." (*People v. Quartermain* (1997) 16 Cal.4th 600, 623-624.) Defendants have made no such showing.

Slip Op. at 10-14.

/ / /

/ / /

10

1           a. Introduction of the Statement

2          The Supreme Court of the United States has had more than one opportunity to discuss the

3   Confrontation Clause implications of the introduction of a non-testifying co-defendant's

4   confession which implicates another defendant in the crime.  In *Bruton v. United States*, 391 U.S.

5   123, 137 (1968), the Court held that, despite a limiting instruction, the introduction of a non-

6   testifying co-defendant's statement to police that implicates a defendant in the crime violates the

7   defendant's constitutional right to confrontation.  The Court concluded that while limiting

8   instructions are common and often sufficient to protect constitutional interests, the risk that the

9   jury would use the confession against the defendant was too great.  *Id.* at 135-36.  Thereafter, in

10  *Richardson v. Marsh*, 481 U.S. 200 (1987), the Court held that it was permissible, in a joint trial,

11  to introduce the confession of one defendant so long as the confession is redacted to omit all

12  reference to the co-defendant and a limiting instruction is given to the jury informing them that

13  they can only use the confession against its speaker.  *Id.* at 203-05 ("the Confrontation Clause is

14  not violated by the admission of a nontestifying codefendant's confession with a proper limiting

15  instruction when . . . the confession is redacted to eliminate not only the defendant's name, but

16  any reference to his or her existence").  This is true even if, combined with other evidence, the

17  confession tends to implicate the defendant in the crime.  *Id.* at 208.  Finally, in *Gray v.*

18  *Maryland*, 523 U.S. 185, 192 (1998), the Court was faced with a situation where the co-

19  defendant's statement was read to the jury but every time the defendant's name was mentioned it

20  was replaced with "deleted" or "deletion."  The Court held that this was improper: "Redactions

21  that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol

22  or other similarly obvious indications of alteration . . . leave statements that, considered as a

23  class, so closely resemble *Bruton*'s unredacted statements that, in our view, the law must require

24  the same result."  *Id.*

25  ///

26  ///

1    The present case closely resembles the permissible use of a co-defendant's statement as

2    set forth in *Marsh*.  Gomez-Perez, Petitioner's co-defendant, essentially made three distinct

3    statements.  First, when shown a picture of Heiner Villeda, Gomez-Perez said "he is Heiner and

4    he was the one who told me to do everything."  Second, Gomez-Perez admitted that "*they* took

5    about $1,500, a computer, telephone, jewelry and digital cameras from" Pinon and Jedrzynski's

6    home.  Lastly, he said that he did not hit Pinon and that Villeda hit Pinon three times with a file

7    from the knife block in Pinon's kitchen.  Of these three statements, only the second statement,

8    and its use of the pronoun "they," could have potentially implicated Petitioner in the crime.  As

9    such, under instruction from the trial court, the detective who took Gomez-Perez's statement

10   testified that Gomez-Perez said that "about $1,500, a computer, telephone, jewelry (five rings

11   and five chains), a digital camera were taken from the house."  Rep.'s Tr. at 1295.  No mention

12   was made of who was involved in stealing the property.  Thereafter, the court informed the jury

13   that Gomez-Perez's statements were not to be used as evidence against Petitioner.  *Id.* at 1429-

14   30; *see also* Clerk's Tr. at 1107 (Jury instruction that states "You have heard evidence that

15   defendant Octavio Gomez-Perez made a statement out of court.  You may consider that evidence

16   only against him, not against any other defendant.").  As such, the procedure used by the trial

17   court closely resembled the procedure upheld by the Supreme Court in *Marsh*—the statement

18   was redacted to remove any potential reference, by use of the term "they," to the Petitioner and

19   the jury was instructed that Gomez-Perez's statements could not be used against Petitioner.

20       The Supreme Court's more recent decision in *Crawford v. Washington*, 541 U.S. 36

21   (2004), does not alter the analysis under *Bruton* and *Marsh*.  While *Crawford* significantly

22   altered the Confrontation Clause analysis, it does not affect this case because Gomez-Perez's

23   statements were not admitted as evidence against Petitioner and thus Petitioner had no right to

24   confront Gomez-Perez.  Admitting the statement against Petitioner would have violated the

25   Confrontation Clause both before and after the Supreme Court decided *Crawford*.  Here,

26   however, where the jury was adequately instructed that they could not use Gomez-Perez's

statement in determining Petitioner's guilt and the statement was redacted to remove any

potential mention or implication of Petitioner.  The state court reasonably concluded that the

Confrontation Clause was not violated.  *See Marsh*, 481 U.S. at 205.

### b.  Limit on Cross-Examination

Petitioner also challenges the limits placed on his cross-examination of Detective

Walstad, the detective who testified about Gomez-Perez and Petitioner's statements.  A careful

review of the record shows that the trial court limited Petitioner's cross-examination only to the

extent that a question would have required a response by the detective that would have violated

*Bruton*, *i.e.*, a statement that one co-defendant had implicated the other defendant when speaking

to Walstad.  Rep.'s Tr. at 1279.

"'The main and essential purpose of confrontation is *to secure for the opponent the

opportunity of cross-examination*.'"  *Davis v. Alaska*, 415 U.S.  308, 315-16 (1974) (quoting 5 J.

Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)) (emphasis in original).  "It does not follow, of

course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from

imposing any limits on defense counsel's inquiry. . . .  On the contrary, trial judges retain wide

latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such

cross-examination."  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  "[T]he Confrontation

Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is

effective in whatever way, and to whatever extent, the defense might wish."  *Delaware v.

Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original).

In the present case, the trial court only limited cross-examination to the extent that it

would violate either of the defendants' Confrontation Clause rights, which both defendants were

unwilling to waive.  This falls within the prerogative of the trial court as, otherwise, the result

would be a trial sure to be reversed on appeal.  The result of finding a constitutional violation

under these circumstances would require defendants who have made statements to police to be

tried separately under almost all circumstances, a position the Supreme Court has rejected.  *See*

1    *Marsh*, 481 U.S. at 209-10 ("Joint trials play a vital role in the criminal justice system . . . .").

2    The Court of Appeal reached a reasonable determination when it determined the limitation on

3    cross-examination did not violate Petitioner's constitutional rights.

4            For the foregoing reasons, Petitioner should be denied relief on this claim.

5            3.  Claim III

6            Next, Petitioner claims that he should be granted the writ because the trial court

7    impermissibly reopened closing arguments based on a question from the jury, without the jury

8    first declaring an impasse.  During questioning of the jury foreperson regarding the jury's

9    questions, the foreperson stated:

10                   Foreperson: I think that some  – maybe some additional comments
                     from the attorneys around the topics where we don't have
11                   agreement on would be helpful to us making a different point of
                     view of how we can draw conclusions from the facts.
12
                     The Court: This all centers on the issue of premeditation and
13                   deliberation, is that correct?

14                   Foreperson: Correct.

15   Rep.'s Tr. at 1641.  Thereafter, the court offered additional instructions regarding premeditation

16   and deliberation, discussed *infra*, and permitted counsel to reopen closing argument, limited, in

17   scope, to the issue of premeditation and deliberation.  Petitioner argues that allowing the

18   prosecution to reargue its case "allowed it to correct any failures of persuasion that may have

19   been made in the original closing argument, thereby violating [Petitioner's] constitutional rights

20   to fair trial by jury and due process of law."  Pet. at 30.

21           Initially, Petitioner contends that the writ should be granted because the reopening of

22   closing arguments violated California law.  California Rule of Court 2.1036 provides that a trial

23   court may permit the attorneys to make additional closing arguments once the jury "has reached

24   an impasse."  Petitioner claims that the members of the jury never explicitly stated that they were

25   at an impasse and, therefore, the reopening of closing arguments violated the California Rule of

26

                                                  14

1    Court.[2]  The federal writ of habeas corpus, however, can only be granted for a "violation of the

2    Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *see also Pulley v.*

3    *Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue a write on the basis of a perceived

4    error of state law.").  As such, even if the trial court violated California law, which the Court of

5    Appeal concluded it had not, it would not provide a basis for federal habeas relief.

6            Petitioner also claims that the reopening of closing argument violated his right to due

7    process because it impermissibly lowered the prosecution's burden of proof.  Petitioner is not

8    entitled to relief on this claim.  The Supreme Court of the United States has never directly

9    addressed whether the reopening of argument, after the jury begins deliberations, violates

10   constitutional mandates.  As such, the reopening of argument in this case does not *per se* violate

11   the Constitution.  Petitioner, however, argues that his trial was rendered fundamentally unfair

12   because the reopening of argument allowed the prosecution to have a second chance to convince

13   the jury of Petitioner's guilt after the jury's question showed that they had demonstrated

14   reasonable doubt.  Petitioner also argues that this somehow lowered the prosecution's burden of

15   proof.  In support of these arguments, amongst several state authorities which have no bearing on

16   this case, *see* 28 U.S.C. § 2254(d)(1), Petitioner relies upon two Supreme Court decisions:

17   *Carella v. California*, 491 U.S. 263 (1989), and *Jenkins v. United States*, 380 U.S. 445 (1965).

18           Neither case would render the reopening of closing argument an unreasonable application

19   of clearly established federal law.  In *Carella*, the Supreme Court reiterated that a jury instruction

20   which creates a mandatory presumption violates the Constitution by foreclosing the jury's

21   independent consideration of the facts.  491 U.S. at 266.  The reopening of argument in this case

22   did not necessarily force a result upon the jury.  *Jenkins* is equally unpersuasive.  In that case,

23

24           ──────────────────

25           [2]       Respondent asserts that this claim is procedurally barred.  In the interests of
     judicial economy, and because the claim is easily denied on the merits for failure to present a
     claim warranting federal habeas relief, the procedural default is not addressed.  *See Lambrix v.*
26   *Singletary*, 520 U.S. 518, 525 (1997) (noting that, in the interest of judicial economy, courts
     might resolve easier matters where complicated procedural default issues exist).

1   after two hours of deliberation the jury concluded that they could not reach a verdict.  380 U.S. at

2   446.  The trial court instructed the jury that "You have to reach a decision in this case."  *Id.*  The

3   Supreme Court remanded the case for a new trial.  The reopening of closing argument is distinct

4   from the trial judge telling the jury that they *must* reach a verdict.  Nothing the trial judge said in

5   this case indicated to the members of the jury that they were required to reach a verdict and the

6   reopening of closing argument, by itself, does not warrant relief on the assumption that the jury

7   interpreted the additional argument and instructions as requiring them to reach a conclusion one

8   way or the other.

9        Petitioner's argument that the reopening of closing argument somehow lowered the

10   prosecutions burden of proof below reasonable doubt is equally unavailing.  In a criminal trial,

11   the prosecution must prove each and every element of the offense beyond a reasonable doubt.  *In*

12   *re Winship*, 397 U.S. 358 (1970).  In the present case, it is true that the prosecution was offered a

13   second chance to argue that the evidence adduced at trail proved Petitioner's guilt beyond a

14   reasonable doubt.  Petitioner's counsel was likewise afforded an opportunity to argue to the

15   contrary.  Both parties continued to address the reasonable doubt standard, and Petitioner cannot

16   point to any statements by the prosecution or the trial judge that suggested a lower standard of

17   proof.  The initial instructions to the jury included the reasonable doubt standard and the

18   defendant's presumption of innocence.  Clerk's Tr. at 1095.  Furthermore, contrary to

19   Petitioner's assertion, the trial court did not reopen closing argument because the jurors were

20   having doubts as to Petitioner's guilt, but rather because the jury was having a difficult time

21   understanding the complex legal concepts of premeditation and deliberation.  Rep.'s Tr. at 1639.

22        The Court of Appeal reached a reasonable conclusion when it determined Petitioner's

23   claim lacks merit.  As discussed above, the Supreme Court has never held that reopening of

24   closing argument, by itself, prejudices a defendant's constitutional rights, and the Petitioner

25   should be denied relief on this claim.

26   / / /

4.  Claim IV

In his final claim, Petitioner alleges that additional instructions that were given to the jury after the reopening of closing argument misstated California law on attempted premeditated murder and, therefore, allowed him to be convicted without proof beyond a reasonable doubt as to his guilt.  Specifically, Petitioner contends that the additional instructions (1) failed to inform the jury of the requirement that Petitioner acted willfully and (2) misinformed the jury of the correct standard for premeditation and deliberation by instructing the jury with language from *People v. Anderson*, 70 Cal.2d 15 (1968).

In ruling on these contentions, the California Court of Appeal stated as follows:

> Before sending the case to the jury, the trial court instructed on the concept of premeditation and deliberation in the language of CALCRIM No. 601.FN6 After three days of deliberation, the jury foreperson informed the court that the jurors were "stuck" and desired further guidance on "premeditation and deliberation" as applied to the facts of the case. The foreperson also indicated that further argument by the attorneys on the issue might be helpful. Over the objections of defense counsel, the court decided to allow the reopening of attorney argument on the issue. It also decided to reread instructions on direct and circumstantial evidence using CALCRIM Nos. 223, 224 and 225, to reread CALCRIM No. 601, and to give the jury a special instruction on premeditation based on *People v. Anderson* (1968) 70 Cal.2d 15 (*Anderson*). Defendants had no objection to the rereading of standard instructions, but they objected to the reopening of argument on constitutional grounds, and to the giving of a special instruction based on *Anderson*.
>
> FN6. As given to the jury, this instruction stated in pertinent part: "If you find the defendant guilty of attempted murder under Counts Fourteen and Fifteen, you must then decide whether the People have proved the additional allegation that the attempted murder was done with deliberation and premeditation. [¶] The defendants deliberated if they carefully weighed the considerations for and against their choice and knowing the consequences decided to kill. The defendants premeditated if they decided to kill before acting. [¶] The length of time the person spends considering whether to kill does not alone determine whether the attempted killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the

17

circumstances. A decision to kill made rashly, impulsively, or without careful consideration of the choice and its consequences is not deliberate and premeditated. [¶] On the other hand, a cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection and not the length of time. The People have the burden of proving this allegation beyond a reasonable doubt. If the People have not met this burden, you must find this allegation has not been proved."

Defendants now contend the trial court (1) erred in allowing the reopening of attorney argument because the jurors never reported that they were at an impasse; (2) prejudicially erred by failing, sua sponte, to provide an instruction clarifying the elements of premeditation and deliberation; (3) erred in fashioning an instruction based on Anderson; and (4) misled the jury by giving CALCRIM No. 601 without including a sentence that described the term "willfully." We take up each of these claims individually.

[Discussion regarding reopening of closing argument, addressed in Claim III, *supra*, as well as one of co-defendant's instructional claims.]

3.   Omission of "willful" from CALCRIM No. 601.

Magana-Torres complains that the court erroneously left out the "willful" component of premeditation when it read CALCRIM No. 601. That language says that "a defendant acted willfully if he intended to kill when he acted." While the court did omit the subject sentence from CALCRIM No. 601, that instruction dealt only with the enhancement, alleging that the attempted murder was done with premeditation and deliberation. The "willful" definition was included in the conspiracy to murder instruction. The jury had no need to consider the enhancement unless they had found defendants had conspired to murder, and such a verdict would necessarily have included a determination that each defendant "intended to kill when he acted." Thus, any omission of the "willful" language from CALCRIM No. 601 was harmless in light of the instructions considered as a whole. ( *People v. Bolin* (1998) 18 Cal.4th 297, 328; *People v. Burgener* (1986) 41 Cal.3d 505, 538-539, overruled on a different ground in *People v. Reyes* (1998) 19 Cal.4th 743, 753.)

4.   Anderson instruction.

Magana-Torres also faults the court for giving a special instruction on premeditation and deliberation based on *Anderson*. He claims the instruction was improper because it is intended only for appellate review and because the court failed to advise the jurors of

18

the proper weight to accord the three categories of evidence *Anderson* describes.

In *Anderson*, *supra*, 70 Cal.2d at pages 26-27, our Supreme Court surveyed various cases and identified three categories of evidence relevant to determining whether there was premeditation and deliberation to support first degree murder: (1) planning activity; (2) motive; and (3) manner of killing. The court has more recently declared that, while Anderson remains a useful aid to reviewing courts in assessing the sufficiency of the evidence to support findings of premeditation and deliberation, "the *Anderson* analysis was intended only as a framework to aid in appellate review; it did not propose to define the elements of first degree murder or alter the substantive law of murder in any way." (*People v. Perez* (1992) 2 Cal.4th 1117, 1125.)

Although *Anderson* was intended primarily to aid appellate courts in reviewing murder verdicts, it does not follow that the factors listed there have no place in jury deliberation. "After the jur[ors] have retired for deliberation, . . . if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given. . . ." (§ 1138 .) "An appellate court applies the abuse of discretion standard of review to any decision by a trial court to instruct, or not to instruct, in its exercise of its supervision over a deliberating jury." (*People v. Waidla* (2000) 22 Cal.4th 690, 745-746.) "'[D]iscretion is abused only if the court exceeds the bounds of reason, all of the circumstances being considered.'" *People v. Kwolek* (1995) 40 Cal.App.4th 1521, 1533, quoting *People v. Stewart* (1985) 171 Cal.App.3d 59, 65.)

While we do not endorse the idea of routinely giving juries an *Anderson* instruction in murder cases, we find the trial court did not abuse its discretion in giving an *Anderson* instruction to a jury that was seeking further guidance on the subject. The instruction simply focused the jurors on some of the factors they might wish to consider when deciding whether the killing was premeditated; the court cautioned them that they should consider all the facts and circumstances surrounding the crime, not just the factors listed. The instruction did not misstate the law. Hence, no reversible error is shown.

Slip Op. at 17-23.

A challenge to a jury instruction solely as an error of state law does not state a claim cognizable in a federal habeas corpus action.  *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973).  To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire

1  trial that the resulting conviction violates due process. *See Estelle*, 502 U.S. at 72; *Cupp*, 414

2  U.S. at 146-47 (In order to prevail, a habeas petitioner must show the instructional error "by itself

3  so infected the trial that the resulting conviction violated due process" and not merely that the

4  instructions as given were "undesirable, erroneous, or even universally condemed.").

5  Additionally, the instruction may not be judged in artificial isolation, but must be considered in

6  the context of the instructions as a whole and the trial record. *See id.* The court must evaluate

7  jury instructions in the context of the overall charge to the jury as a component of the entire trial

8  process. *See United States v. Frady*, 456 U.S. 152, 169 (1982). Furthermore, even if it is

9  determined that the instruction violated the petitioner's right to due process, a petitioner can only

10  obtain relief if the unconstitutional instruction had a substantial influence on the conviction and

11  thereby resulted in actual prejudice under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993),

12  which is whether the error had substantial and injurious effect or influence in determining the

13  jury's verdict. *See, e.g.*, *Hedgpeth v. Pulido*, 555 U.S. 57 (2008) (per curiam).

14       As to Petitioner's first contention, that the trial court erred in failing to instruct the jury on

15  willfulness when it gave the jury further instructions after closing argument was reopened, any

16  error was harmless. As the Court of Appeal concluded, another count of which the jury found

17  Petitioner guilty, conspiracy to commit murder, required the jury to conclude Petitioner acted

18  willfully. As to that count, the jury was instructed "To prove that a defendant is guilty of

19  [conspiracy to commit murder], the People must prove that . . . [a]t the time of the agreement, the

20  defendant acted willfully, deliberately and with premeditation." Clerk's Tr. at 1145. The jury

21  was further instructed with the definition of willfully: "A defendant acted willfully if he intended

22  that a person be killed." *Id.* The jury convicted Petitioner of conspiracy to commit murder, and

23  thus concluded that he acted willfully. As such, the failure to include wilful in the attempted

24  murder instruction was harmless.

25  / / /

26  / / /

20

1    Petitioner's second contention, related to an instruction pursuant to *People v. Anderson*,

2   *supra*, lacks merit.  Though *Anderson* was not intended to be used as a jury instruction, *People v.*

3   *Thomas*, 2 Cal.4th 489, 517 (1992), it has accurately reflected the law on premeditation and

4   deliberation in California for over fourty years.  California is free to determine what constitutes

5   premeditated and deliberate murder within its boundaries.  As such, an instruction based on

6   *Anderson* correctly informed the jury of the standards under California law for finding

7   premeditation and deliberation.  The instruction did not lower the prosecution's burden of proof,

8   but merely attempted to help the jury better understand the sometimes difficult concepts of

9   premeditation and deliberation.  The Court of Appeal reasonably concluded the instruction did

10   not violate Petitioner's constitutional rights.

11            IV.  REQUEST FOR AN EVIDENTIARY HEARING

12    Finally, Petitioner requests an evidentiary hearing on his Claims.  *See* Pet. at 8.  A court

13   presented with a request for an evidentiary hearing must first determine whether a factual basis

14   exists in the record to support petitioner's claims, and if not, whether an evidentiary hearing

15   "might be appropriate."  *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999); *see also Earp*

16   *v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005).  A petitioner requesting an evidentiary hearing

17   must also demonstrate that he has presented a "colorable claim for relief."  *Earp*, 431 F.3d at

18   1167 (citations omitted).  To show that a claim is "colorable," a petitioner is "required to allege

19   specific facts which, if true, would entitle him to relief."  *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th

20   Cir. 1998) (internal quotation marks and citation omitted).  In this case, Petitioner's claims are

21   readily determined by the record.  Petitioner has not alleged any additional facts that, if true,

22   would entitle him to relief and, therefore, Petitioner fails to demonstrate that he has a colorable

23   claim for federal habeas relief.  Moreover, the Supreme Court has recently held that federal

24   habeas review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the state

25   court that adjudicated the claim on the merits" and "that evidence introduced in federal court has

26   no bearing on" such review.  *Cullen v. Pinholster*, __ U.S. __, 131 S.Ct. 1388, 1398, 1400

21

1  (2011).  Thus, his request will be denied.

2                                          V.  CONCLUSION

3         Accordingly, IT IS HEREBY ORDERED that Petitioner's request for an evidentiary

4  hearing is DENIED.

5         For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that the petition for

6  writ of habeas corpus be DENIED.

7         These findings and recommendations are submitted to the United States District Judge

8  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

9  after being served with these findings and recommendations, any party may file written objections

10  with the court and serve a copy on all parties.  Such a document should be captioned "Objections

11  to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be

12  served and filed within seven days after service of the objections.  The parties are advised that

13  failure to file objections within the specified time may waive the right to appeal the District

14  Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects to file,

15  Petitioner may address whether a certificate of appealability should issue in the event he elects to

16  file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254

17  Cases (the district court must issue or deny a certificate of appealability when it enters a final

18  order adverse to the applicant).

19  DATED:  December 19, 2011

20

21

22

23

24                                     _____

25                                     TIMOTHY J BOMMER
                                       UNITED STATES MAGISTRATE JUDGE
26

                                            22